JAS. E. MITCHELL et al. *v.* J. A. SHRADER et al.

**Assignment — Statute of March 10, 1856.**

> Where a debtor in contemplation of insolvency attempts to secure one or more creditors to the exclusion of others, however free from fraud the case may be as to such preferred creditors, yet the statute makes the transfer inure to the benefit of all the other creditors, not only as to the property or effects so transferred, but all the property and effects of the debtor.

APPEAL FROM DAVIESS CIRCUIT COURT.

December 5, 1865.

OPINION BY THE COURT:

The administrator's bond of I. L. Phillips upon which a judgment was rendered against him and his sureties for over $17,000 in the Louisville Chancery Court was dated in 1855.

When the relators instituted suit on this bond against Phillips and his sureties does not appear, but the judgment had been rendered when this suit by his sureties was filed July 19, 1861.

This is a proceeding under our statute of March 10, 1856, to prevent fraudulent assignments, etc., and the averments are sufficiently explicit and comprehensive to authorize the interposition of the chancellor, so far as to investigate and determine the rights of the respective parties, according to the provision of said enactment.

The evidence is entirely imposing as to the embarrassment of I. L. Phillips and that he intended and desired and attempted to secure certain creditors to the exclusion of others, especially this

judgment on his bond as administrator, thereby leaving the entire responsibility of its payment on his sureties, else leave the judgment creditors unprovided for, and all his deeds, transfers, mortgages, execution sales, attachments by his mother-in-law, etc., were made, arranged, and concocted in view of his inability to pay his creditors and in contemplation of insolvency.

It must be presumed, as this court has frequently decided, that a man has reasonable knowledge of his affairs, and where his property is greatly inadequate to the payment of his debts he must be presumed to know this; besides it is abundantly proven in this case that Phillips did know his inability to pay his debts, and that he desired to evade the payment of this large judgment, and that about the time it was rendered, whether before or after matters but little, as he must be presumed to know that a large judgment would be rendered against him, he sent four slaves by his brother-in-law to Missouri and had them sold for about $3,000 in cash, which was paid over to him; about the same time he sold and conveyed to an uncle 1,202 acres of land in Illinois for about $600, and attempted to sell some twelve slaves to this same uncle. He had about this time also attempted to mortgage said slaves to his mother-in-law; and to consummate this arrangement and comply with the statute so as to make the indebtedness and mortgage contemporaneous she seems to have attempted to borrow the money from both of the banks, in Owensboro, with the understanding that it would be returned in a few days; this application for a loan of $5,000 or $6,000 with such an extraordinary understanding induced both banks to reject the proposition, hence this mortgage must be abandoned; after which the attempted sale to the uncle miscarried for it was apparent he would involve himself in a litigation with the creditors, and as executions to a large amount were then in the sheriff's hands and a lien created a large amount in money must be advanced.

After the miscarriage of the mortgage project Phillips on April 5th notified the sheriff to sell the twelve slaves the next day at his house without notice.

The mother-in-law, her attorney, and the uncle were there when the sale to the uncle was made known to the sheriff but it was soon abandoned. Phillips then gave the sheriff notice to sell the slaves the following Monday at the courthouse in Owensboro, without notice, and the mother-in-law the same day had attachments prepared against Phillips for the large indebtedness of $6,624.69.

As it is apparent that numerous acts to prefer some creditors to others had previously been perpetrated by Phillips, in contemplation of insolvency, the chancellor properly adjudged that the case comes within the provisions of our statute against fraudulent assignments, etc., and referred the matter to the master commissioner to ascertain and report all the *bona fide* debts of Phillips, and to whom due, and all the *bona fide* liens, and to whom due, their order, priority, etc. This report has not as yet been made, but Mrs. Taylor and others have appealed from the determination that the cause comes within the purview of said statute.

It may be remarked that when a debtor in contemplation of insolvency attempts to secure one or more creditors to the exclusion of others, however free from fraud the case may be as to such preferred creditors, yet the statute makes the transfer inure to the benefit of all the creditors, not only as to the property or effects so transferred, but of all the property and effects of the debtor. There is now no question before us as to whether any of the debts asserted against Phillips are meretricious; this cannot come up until the master reports and the chancellor determines as to such questions.

The judgment is, therefore, affirmed.